IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STATESBORO ERECTORS, INC.,
    Plaintiff,

v.

OWNERS INSURANCE COMPANY,
    Defendant.

Civil Action No.
1:23-cv-02664-SDG

**OPINION AND ORDER**

This case is before the Court on Defendant Owners Insurance Company's motion for summary judgment [ECF 13]. After careful consideration, and with the benefit of oral argument, the Court **DENIES** the motion.

**I.   Background**

This is an insurance dispute that arises out of a contract between Plaintiff Statesboro Erectors and non-party King Steel whereby King Steel engaged Statesboro as a subcontractor to perform certain construction work.[1] While working on the project, an accident occurred and caused damage on the work site.[2] King Steel sought payment from Statesboro in connection with the accident.[3] Statesboro maintained an insurance policy issued by Owners.[4] Statesboro filed

---

[1]   ECF 12, ¶ 1.

[2]   *Id.* ¶ 9.

[3]   *Id.* ¶ 11.

[4]   *Id.* ¶ 27.

1

claims seeking coverage for the accident. Owners paid certain claims, but denied others.[5] Statesboro then filed suit, contending that Owners wrongfully denied coverage and seeking to recover the $456,874 in damages it paid to King Steel.[6] The two-count complaint alleges breach of contract and bad faith penalties against Owners.[7]

### A.    The steel collapse.

Non-party Griffco was the general contractor for a construction project in McDonough, Georgia. King Steel was hired as the "steel fabricator" on the project.[8] King Steel subcontracted with Statesboro for Statesboro to complete certain construction work at the site.[9] Specifically, Statesboro agreed to:

> (1) Prepare all necessary temporary bracing drawings and/or critical lift plans; and (2) perform all work and shall furnish all supervision, management, labor, materials, tools, equipment, cranes, safety equipment and procedures, licenses and permits, supplies and all other things necessary for the complete, proper and safe erection of the structural steel in full accordance with the plans, specifications, and all work incidental . . . thereto, in strict accordance with the terms of the Subcontract; and to the satisfaction of [Griffco] and [Ken's Foods] ("Work").[10]

---

5   *Id.* ¶ 19.
6   ECF 1.
7   *Id.* ¶¶ 46–55.
8   ECF 12, ¶ 3.
9   *Id.* ¶ 1.
10  *Id.* ¶ 4.

2

On October 9, 2021, there was a steel collapse at the construction site.[11] According to King Steel, the collapse "appeared to have occurred due to lack of temporary cables or bracing for steel columns."[12] Because of the collapse, King Steel was required to supply additional materials to replace the structural damage caused by the collapse.[13]

### B. The demand letters.

After the collapse, the involved entities sent various demand letters seeking to ensure that the correct entity paid for the damage. First, King Steel sent Statesboro a letter on March 1, 2022 seeking $426,291.89 in damages to allow King Steel to "supply additional structural steel…and joists to replace the structural steel damaged in the collapse."[14] A week later, King Steel sent a second letter to Statesboro, this time demanding payment of an additional $410,385.27.[15] This request was based on the deductive change order King Steel received from Griffco.[16]

---

[11] *Id.* ¶ 9.
[12] ECF 12-1, at 2.
[13] *Id.*
[14] *Id.*
[15] ECF 12-2, at 2.
[16] ECF 12, ¶ 13.

As Statesboro's insurer, Owners responded to the letters. It denied coverage for the $426,291.89 claim, but requested additional information with respect to the deductive change order in the amount of $410,385.27.[17] Owners and King Steel ultimately reached a settlement and Owners agreed to pay a portion of this amount.[18] Months later, King Steel sent a demand letter to Statesboro seeking immediate payment of the $468,266.89 it had demanded.[19] King Steel also requested that the parties mediate the dispute, which Statesboro agreed to do. Statesboro requested that Owners participate in the mediation, which Owners declined to do.[20] During the mediation, Statesboro and King Steel reached a settlement—Statesboro agreed to pay King Steel $456,874.[21]

Statesboro then sent Owners a letter demanding reimbursement for the $456,874.[22] Owners denied this request because, according to Owners, it was payment for items not covered by Statesboro's insurance policy.[23]

---

[17] ECF 12-3, at 3.
[18] ECF 12, ¶ 19.
[19] *Id.* ¶ 18.
[20] *Id.*
[21] *Id.* ¶ 25.
[22] *Id.*
[23] *Id.* ¶ 26.

**II.  Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party's burden can be discharged either by showing an absence of evidence to support an essential element of the nonmoving party's case or by showing that the nonmoving party will be unable to prove their case at trial. *Celotex*, 477 U.S. at 325; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.*

Statesboro did not timely file a brief opposing Owners' motion, but "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 7th Ave.*, 363 F.3d 1099, 1101–02 (11th Cir. 2004). In particular, the court must "review all of the evidentiary materials submitted in support of the motion for summary judgment," and "determine if there is, indeed, no genuine issue of material fact." *Id.* at 1101–02 & 1103 n.6.

### III.  Discussion

Owners moves for summary judgment arguing that the damages Statesboro seeks to recover are not covered by the policy. Its argument is two-fold. First, it contends that the $456,874 in damages does not qualify as "property damage" under the policy at all because it reflects the faulty workmanship of Statesboro. Second, it argues that to the extent some of the damage qualifies as "property damage," it is nonetheless excluded under various policy exclusions.

As an initial matter, the Court will not consider Statesboro's response in opposition to the motion. It was not timely filed and the Court finds no good cause

to excuse Statesboro's tardiness.[24] Regardless, the Court must consider the merits of the motion. *5800 SW 7th Ave.*, 363 F.3d at 1101–02.

The dearth of evidence in this case is fatal to Owners' motion. There is no evidence in the record regarding the cause of, extent of, details surrounding, or the party responsible for the structural collapse. Owners denied coverage based exclusively on a letter sent from the President of King Steel to the President of Statesboro.[25] In the letter, King Steel states that "there was a steel collapse during the erection of the Project by Statesboro. According to information obtained by King Steel,[26] the collapse appears to have occurred due to lack of temporary cables or bracing for steel columns."[27] This is the only evidence suggesting that the steel collapse was due to any faulty workmanship or inadequate construction by Statesboro. It is simply King Steel's assertion of the cause without any underlying evidence to support its position. During oral argument, Owners admitted that beyond this demand letter, there is no evidence in the record indicating that

---

[24] Statesboro's Counsel filed a response to the Court's Order to Show Cause explaining why the response was filed late, which had to do with Counsel failing to ensure that his email address was accurately updated when he changed firms [ECF 17].

[25] ECF 12-3.

[26] This information, assuming it exists, is not part of the record.

[27] ECF 12-1, at 2.

Statesboro was negligent or that its workmanship was faulty with respect to the erection of the steel structure.

This lack of evidence prevents the Court from finding that, as a matter of law, certain policy provisions are applicable. For example, Owners argues that the damage here does not constitute "property damage" under the policy because the damages Statesboro seeks are based on its own faulty workmanship. It is well settled in Georgia[28] that the "property damage" requirement in CGL policies such as the one at issue here "limit coverage in faulty workmanship cases to instances in which the faulty workmanship has damaged other, non-defective property or work"; that is, "damage beyond mere faulty workmanship" on the work the insured was hired to perform. *Cowart v. Nautilus Ins. Co.*, No. 4:17-cv-142, 2019 WL 254662, at *6 (S.D. Ga. Jan. 17, 2019) (quoting *Taylor Morrison Servs., Inc. v. HDI-Gerling Am. Ins. Co.*, 293 Ga. 456, 461 (2013)). On the record before it, the Court cannot determine whether the damages sought by Statesboro are the result of its faulty workmanship.

This lack of evidence also prevents the Court from finding that certain policy exclusions apply. For example, exclusion j(6) excludes coverage for property

---

[28] The parties agree that Georgia law applies to Statesboro's claims. When, as here, this Court exercises jurisdiction based on diversity of citizenship, it applies Georgia law. U.*S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.*, 550 F.3d 1031, 1033 (11th Cir. 2008).

damage to "that particular part of any property" that must be restored or repaired because work was "incorrectly performed."[29] Exclusion (m) excludes coverage for property damage to impaired property arising out of a "defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work.'"[30] Both of these exclusions require the Court to find that there is no dispute of fact as to Statesboro's faulty or deficient work. On this record, that is not possible.

Exclusion j(5) also requires a finding of fact which the record does not support. It excludes from coverage "that particular part" of property on which work is being performed by or on behalf of the insured.[31] The exception requires the Court to define on which particular part of the construction site Statesboro was operating at the time of the collapse and essentially subdivide the property to determine, on the flip-side, where it was not operating. But the Court has no evidence to allow it to make such a finding. It has no insight into the underlying accident that would allow it to determine the scope of the property being worked on and compare that to the scope of the property where damage occurred.

Finally, exclusions (k) and (l) fail as a matter of law. Exclusion (k) excludes coverage for damage to the insured's product, meaning only to "goods or products

---

[29] ECF 12-4, at 34.

[30] *Id.* at 35.

[31] *Id.* at 34.

other than real property, manufactured, sold, handled, distributed or disposed of" by certain parties.[32] Statesboro's construction work is not a "good" or "product." It was providing a service rather than a tangible item to which exclusion (k) was designed to apply. Exclusion (l) is also inapplicable because, by the plain language of the provision, it applies only to work that is already completed.[33] There is no dispute that the steel collapse occurred during the course of Statesboro's work. At bottom, the absence of evidence presented in support of summary judgment with respect to the underlying accident dooms Owners' motion.

## IV.   Conclusion

The Court **DENIES** Owners' motion for summary judgment [ECF 13]. The parties are **DIRECTED** to file their Proposed Consolidated Pretrial Order on or before **October 30, 2024**. By that same date, each party is **ADVISED** to file a Notice

---

[32]   *Id*. at 34.

[33]   This provision excludes: "Property damage" to "your work" arising out of it or any part of it *and* included in the "products-completed operations hazard." However, the "products-completed operations hazard" exempts "[w]ork that has not yet been completed or abandoned." *Id*.

of Leave of Absence on the docket, identifying conflict dates through June 2025. Trial may be scheduled thereafter without further notice.

**SO ORDERED** this 30th day of September, 2024.

                                    Steven D. Grimberg
                              United States District Judge